**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **AURORA OPERATING LLC .** | § | **CASE NO. 16-30218** |
| **Debtor** | § | **(Chapter 11)** |

---

**DEBTOR'S PLAN OF REORGANIZATION**
**PURSUANT TO 11 U.S.C.§1121**

**DATED MAY 1ST, 2016**

---

**CRAIG H. CAVALIER**
State Bar No. 04022075
5555 West Loop South, Suite 600
Bellaire, Texas 77401
(713) 621-4720 –Telephone
(713) 621-4779 – Fax
ccavalier@cavalierlaw.net


**JAMES B. JAMESON**
State Bar No. 10598500
P. O. Box 980575
Houston, TX 77098
713-807-1705-Telephone
713-807-1710-Facsimile
jbjameson@jamesonlaw.net
**COUNSEL TO THE DEBTOR AND
THE DEBTOR-IN-POSSESSION**

TABLE OF CONTENTS

PAGE

ARTICLE I        DEFINITIONS AND INTERPRETATION .................................................. 2

1.1    Rules of Interpretation ............................................................. 2

1.2    Definitions.............................................................................. 2

ARTICLE II        PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE
               CLAIMS ................................................................................... 3

2.1    Treatment of Allowed Administrative Expense Claims ......................... 3

2.2    Bar Date for the Filing and Assertion of Administrative Expense Claims,
       Including Professional Fees but Excluding Ordinary Course
       Administrative Claims ............................................................. 3

ARTICLE III        CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .................. 3

3.1    Creation of Classes .................................................................. 3

3.2    Claims May Be in More Than One Class .......................................... 3

ARTICLE IV        IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY
               INTERESTS THAT ARE AND ARE NOT IMPAIRED UNDER
               THIS PLAN ............................................................................... 4

4.1    Classes of Claims Not Impaired ................................................... 4

4.2    Impaired Classes of Claims ....................................................... 4

4.3    Impairment Controversies.......................................................... 4

ARTICLE V        PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND
              EQUITY INTERESTS................................................................. 4

5.1    Class 1 - Priority Claims and Pre-Petition Ad Valorem Tax Claims.................... 4

5.2    Class 2 - Secured Claims of Creditors that have asserted perfected

       lien claims pursuant to Chapter 56 of the Texas Property Code .......................... 4

5.5    Class 3 - Unsecured Claims (Not Exceeding $2,000.00) ..................................... 5

5.6    Class 4 – Unsecured Claims (Exceeding $2,000.00).......................................... 5

5.7    Class 5 – Equity Interests........................................................ 6

5.8    Allowance of Unliquidated or Contingent Claims.................................. 6

ARTICLE VI        ACCEPTANCE OR REJECTION OF THIS PLAN ...................................... 6

6.1    Classes and Claims Entitled to Vote ................................................ 6

6.2    Cramdown............................................................................. 6

ARTICLE VII        PROCEDURES FOR RESOLVING AND TREATING CONTESTED
                AND DISPUTED CLAIMS UNDER THIS PLAN ....................................... 6

7.1    Responsibility for Objecting to Claims ................................................ 6

7.2    Objections to Claims ........................................................................... 7

7.3    Filing and Assertion of Claims .......................................................... 7

7.4    No Distributions Until Claim is an Allowed Claim ........................... 7

7.5    Voting ................................................................................................. 7

7.6    Prohibition on Distributions Attributable to Claims While Any Avoidance Litigation is Pending ............................................................................ 7

7.5    Absolute Priority Rule ........................................................................ 8

ARTICLE VIII     IMPLEMENTATION AND MEANS FOR EXECUTION OF PLAN ........... 8

8.1    Assignment of Working Interest from Aurora Energy ........................ 8

8.2    Sale of Excess Equipment .................................................................. 8

8.3    Vesting of Property of the Estate in the Debtor ................................. 9

ARTICLE IX     MANNER OF DISTRIBUTION AND PROVISION FOR TREATMENT OF CLAIMS AND SETOFFS ................................. 9

9.1    Distribution Procedures ...................................................................... 9

9.2    Disputed Payments or Distributions ................................................... 9

9.3    Minimum Distribution ........................................................................ 9

9.4    Setoff .................................................................................................. 9

9.5    Interest on Claims ............................................................................. 10

9.6    Further Authorizations ...................................................................... 10

9.7    Termination of the Estate .................................................................. 10

9.8    Directors and Officers ...................................................................... 10

9.9    Creation of Plan Trust for Purpose of Distribution and Litigation ..... 10

9.10    Plan is Trust Instrument ................................................................... 10

9.11    Beneficiaries of Plan Trust ............................................................... 10

9.12    Distribution of Net Production Revenue Attributable to the Swenson No. 1 Well ................................................................................................... 10

9.13    Appointment of the Plan Trustee ...................................................... 11

9.14    Identity and Employment of the Plan Trustee ................................... 11

9.15    Compensation of Plan Trustee .......................................................... 11

9.16    Records ............................................................................................. 11

9.17    Further Authorizations ...................................................................... 12

9.18    Termination of the Estates ................................................................ 12

9.19    Tax Treatment .................................................................................. 12

ARTICLE X        EXECUTORY CONTRACTS AND LEASES ........................................... 12

    10.1   Assumption of Contracts and Leases ................................................... 12

ARTICLE XI       CONDITIONS PRECEDENT ....................................................... 12

    11.1   Conditions Precedent to Effectiveness.................................................... 12

ARTICLE XII      EFFECTS OF PLAN CONFIRMATION.......................................... 12

    12.1   Satisfaction, Release and Discharge of Claims.................................... 12

    12.2   Injunction ........................................................................................ 13

    12.3   No Liability for Solicitation or Participation ..................................... 13

    12.4   Releases and Limitation of Liability of Exculpated Persons .............. 13

    12.5   Term of Injunctions and Stays ........................................................... 14

    12.6   No Liability for Tax Claims ............................................................... 14

ARTICLE XIII     MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS
               PLAN ........................................................................................... 14

    13.1   Modification of this Plan ................................................................... 14

    13.2   Revocation or Withdrawal of this Plan............................................... 14

ARTICLE XIV     RETENTION OF JURISDICTION ............................................... 15

    14.1   Jurisdiction of Bankruptcy Court....................................................... 15

    14.2   Failure of Bankruptcy Court to Exercise Jurisdiction........................ 16

ARTICLE XV      DEFINITIONS........................................................................ 16

ARTICLE XVI     MISCELLANEOUS PROVISIONS.............................................. 21

    16.1   Payment of Statutory Fees ................................................................. 21

    16.2   Retention of Actions and Defenses..................................................... 21

    16.3   No Admissions ................................................................................... 21

    16.4   Plan Controls..................................................................................... 21

    16.5   Substantial Consummation of Plan..................................................... 21

    16.6   Successors and Assigns....................................................................... 21

    16.7   Severability ....................................................................................... 21

    16.8   Notices and Distributions................................................................... 22

    16.9   Filing of documents in Public Records ............................................... 22

    16.10  Withdrawal of Plan ........................................................................... 22

    16.11  Due Authorization by Creditors......................................................... 22

    16.12  Filing of Additional Documentation................................................... 22

    16.13  Implementation ................................................................................. 22

16.14   Pre-petition Lawsuits ........................................................................ 23

16.15   Governing Law ................................................................................. 23

16.16   Defaults ............................................................................................ 23

16.17   Binding Effect ................................................................................. 23

16.18   Other Documents and Actions ......................................................... 23

CONFIRMATION REQUEST .......................................................................... 24

APPENDIX 1 Liquidation Analysis

APPENDIX 2 Financial Pro Formas and Balance Sheet

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **AURORA OPERATING LLC** | § | **CASE NO. 16-30218** |
| **Debtor** | § | **(Chapter 11)** |

---

**DEBTOR'S PLAN OF REORGANIZATION**
**PURSUANT TO 11 U.S.C.§1121**

**DATED MAY 1ST, 2016**

---

**DEBTOR'S PLAN OF REORGANIZATION**

The Debtor, **AURORA OPERATING LLC** hereby proposes the following Plan of Reorganization pursuant to the provisions of Section 1121 of the United States Bankruptcy Code.

**ARTICLE I**
**DEFINITIONS AND INTERPRETATION**

1.1    _Rules of Interpretation_.   Unless otherwise specified, all Section and Article references in this Plan are to the respective Section or Article of this Plan, as the same may be amended, waived or modified from time to time.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Words denoting the singular number shall include the plural number and vice versa.  In construing this Plan, the rules of construction set forth in the Bankruptcy Code or the Bankruptcy Rules shall apply.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  The words "herein," "hereof," "hereto," "hereunder" and other terms of similar import refer to this Plan as a whole and not to any particular Article, Section, subsection or clause contained in this Plan.  The words "include," "includes," "including," and similar words or phrases shall be deemed to be followed by the phrase "without limitation."

1.2    _Definitions_.  Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code or the Bankruptcy Rules, have the meanings ascribed to them in the Bankruptcy Code or the Bankruptcy Rules.  Unless otherwise provided in this Plan, the terms defined in Article XVI (which appear in this Plan as capitalized terms) have the respective meanings set forth in Article XVI, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

## ARTICLE II
## PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

2.1     Treatment of Allowed Administrative Expense Claims.   Each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Administrative Expense Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and by the Debtor.

2.2     Bar Date for the Filing and Assertion of Administrative Expense Claims, Including Professional Fees but Excluding Ordinary Course Administrative Claims.   All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims, other than Ordinary Course Administrative Claims, that have not been paid, released or otherwise settled, including all requests for payment of Professional Fees, must be filed with the Bankruptcy Court and served upon the Debtor no later than the Administrative Expense Claims Bar Date.  *Pursuant to Article XVI, the Administrative Expense Claims Bar Date shall be thirty (30) days after the Effective Date.*  Any request for payment of Administrative Expense Claims that is not filed by the Administrative Expense Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Estate; provided, however, that Ordinary Course Administrative Claims that were incurred after the Filing Date may be paid in the ordinary course of the Debtor's business and, if not previously paid in the ordinary course of the Debtor's business, shall be paid by the Debtor, or after the Effective Date.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.1     Creation of Classes.   Administrative Expense Claims have not been classified and are excluded from the following Classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.  Pursuant to Section 1122 of the Bankruptcy Code, this Plan classifies the Claims against the Debtor as follows:

| | |
|---|---|
| Class 1 -- | Priority Claims and Pre-Petition Ad Valorem Tax Claims |
| Class 2 -- | Secured Claim of Pre-Petition Creditors that have asserted perfected lien claims pursuant to Chapter 56 of the Texas Property Code |
| Class 3 -- | Unsecured Claims of Trade Creditors (Claims Under $2,000.00) |
| Class 4 -- | Unsecured Claims of Trade Creditors (Claims Over $2,000.00) |
| Class 5 -- | Claims of Equity Security Holders. |

3.2     Claims May Be in More Than One Class.   A Claim (including an Allowed Claim) is part of a particular Class only to the extent that the Claim qualifies within the definition of that Class, and such Claim is part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

3

**ARTICLE IV**
**IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS**
**THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN**

4.1     <u>Classes of Claims and Interests Not Impaired</u>.  Class 1 and 5 are not impaired under this Plan.

4.2     <u>Impaired Classes of Claims</u>.  Classes 2, 3 and 4 are impaired under this Plan.

4.3     <u>Impairment Controversies</u>.  If a controversy arises as to whether any Class of Claims or Class of Equity Interests is impaired under this Plan, such Class shall be treated as specified in this Plan unless, prior to Confirmation of this Plan, the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class of Claims or Class of Equity Interests under this Plan.  Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Case.  In addition, the Bankruptcy Court may, in accordance with §506(b) of the Bankruptcy Code, conduct valuation hearings to determine the Allowed Amount of any Secured Claim.

**ARTICLE V**
**PROVISIONS FOR TREATMENT OF CLASSES OF**
**CLAIMS AND EQUITY INTERESTS**

5.1     **Class 1 – *Priority Claims and Pre-Petition Ad Valorem Tax Claims:*** This Class consists of Allowed Claims (i) entitled to priority under §507(a)(1 through 6) of the Code including, but not limited to, the United States Trustee's fees pursuant to Chapter 123 of Title 28 United States Code, Sec. 1930(a) and (ii) Pre-Petition Ad Valorem Tax Claims of governmental taxing authorities against the Debtor's real and personal property.  To the extent not paid prior to the Effective Date of the Plan, each holder of an Allowed Priority Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Priority Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, but in no event later than December 31, 2016; or (iv) such date that is established by Texas statute as the date Ad Valorem Taxes are due and owing. Furthermore, all Allowed Ad Valorem Tax Claims shall retain their liens against the Debtor's property (both real and personal) in the same priority as their pre-petition statutory liens.

5.2     **Class 2 – *Secured Claims of Pre-Petition Creditors that have asserted perfected liens pursuant to Chapter 56 of the Texas Property Code:*** Class 2 consists of the Allowed Secured Claims of Creditors that have asserted perfected liens pursuant to Chapter 56 of the Texas Property Code. *The Debtor has not completed its analysis or  review of the validity, priority or extent of such lien claims and reserves the right to object to the Class 2 Claims prior to confirmation.*

4

5.3     In full satisfaction, release and discharge of, and in exchange for, their respective Allowed Secured Class 2 Claim, the Debtor shall satisfy such Claims in full, from the Net Production Revenue attributable to the Swenson 185-1H Well located in Throckmorton County, Texas currently operated by the Debtor (the "Swenson No. 1 Well"). It is anticipated that such payments will be made by the Plan Trustee on a pro-rata basis over a Eighteen (18) month period from the Effective Date of the Plan.

5.4     On the Effective Date, any validly perfected liens or encumbrances filed by a Class 2 Creditor with an Allowed Claim, shall be limited to the drill site acreage of the Swenson No. 1 Well and the Net Production Revenue attributable thereto. Any Allowed Class 2 Claim shall not encumber any other acreage of the Debtor or the current working interest owners in the Swenson Ranch Field. *Any future oil and gas revenues attributable to any other wells drilled on the Swenson Ranch Field shall not be encumbered or used by the Debtor to fund the Plan.*

5.5     Class 2 is Impaired.

5.5     **Class 3 - *Unsecured Claims (Not Exceeding $2,000):*** Class 3 consists of the Allowed Unsecured Claims of Creditors whose claims against the Debtor do not exceed two thousand dollars and No/100 ($2,000.00).

5.5.1 In full satisfaction, release and discharge of, and in exchange for, all of their respective Allowed Unsecured Claims, each holder of an Allowed Unsecured Claim in Class 3, consisting of Unsecured Claims not exceeding Two Thousand and No/100 Dollars ($2,000.00), shall receive payment in full, but in two (2) equal installments. The first (1st) installment shall be made thirty (30) days after the Effective Date in an amount equal to fifty percent (50%) the Allowed Claim of each Unsecured Claimant in Class 3. The balance of the Claim shall be paid one hundred eighty (180) days after the Effective Date of the Plan.

5.5.2 *Alternatively, if a holder of an Allowed Class 3 Claim elects to reduce its claim to fifty percent (50%) of its Allowed Claim, it shall be paid the reduced amount, in full, ten (10) days after the Effective Date after payment of all Administrative Claims in Class 1.*

5.5.3   Class 3 is Impaired.

5.6 *Class 4 - **Unsecured Claims (Exceeding $2000):*** Class 4 consists of Allowed Unsecured Claims whose Claims against the Debtor exceed Two Thousand and No/100 Dollars ($2,000.00).

5.6.1 In full satisfaction, release and discharge of, and in exchange for, all of their respective Allowed Unsecured Claims, each holder of an Allowed Unsecured Claim in Class 4, consisting of Unsecured Claims exceeding Two Thousand and No/100 Dollars ($2,000.00), shall receive (i) an initial cash payment equal to five percent (5%) of their Allowed Unsecured Claim made within ninety (90) days after the Effective Date and (ii) a pro-rata share of the Net Production Revenue attributable to the Swenson No. 1 Well as described herein and in the Debtor's

Disclosure Statement.  Such pro-rata share shall be paid after all claims in Classes 2 and 3 are paid in full.

> **5.6.2** ***Alternatively, a holder of an Allowed Class 4 Claim may elect to reduce its claim to two thousand dollars ($2,000.00) and be treated in accordance with Class 3***

> 5.6.3   Class 4 is Impaired.

5.7     ***Class 5 – Equity Interests:***  On the Effective Date, all Equity Interests shall be cancelled and extinguished.  New shares of stock shall be issued to the current holders of Equity Interests. However, until all superior classes of claims are satisfied, holders of Class 5 Equity Interests shall not receive or retain distributions or dividends on account of their Equity Interests.

> 5.7.1   Class 5 is Impaired and is deemed to have accepted the Plan.

5.8     ***Allowance of Unliquidated or Contingent Claims:***  Pursuant to Section 502(c) of the Bankruptcy Code, before, on or after the Effective Date, the Claimant or the Debtor may seek the estimation of any Unliquidated Claim or Contingent Claim. Any estimation of an Unliquidated Claim or a Contingent Claim shall constitute a final determination of the Allowed amount of such Claim for all purposes.  To the extent an Unliquidated Claim or a Contingent Claim is estimated by Final Order of the Bankruptcy Court, it shall receive the treatment for the particular type of Claim set forth in this Article V for the amount estimated by the Bankruptcy Court.  Any Unliquidated Claim or Contingent Claim shall be treated as a Disputed Claim until and unless it becomes an Allowed Claim pursuant to a Final Order of the Bankruptcy Court.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF THIS PLAN

6.1     <u>Classes and Claims Entitled to Vote</u>.  Each holder of an impaired Claim (other than a Claim or Interest that will receive no recovery under this Plan) shall be entitled to vote to accept or reject this Plan.  Classes of Claims not impaired under this Plan shall not be entitled to vote to accept or reject this Plan and shall be presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 1 is not impaired and hence are presumed to have accepted this Plan.  Class 2 holds  secured claims to the extent of the value of the Collateral and is impaired and therefore is entitled to vote to accept or reject this Plan.  Classes 3 and 4 are impaired and therefore are entitled to vote to accept or reject this Plan.  Class 5, which comprises the holders of Equity Interests, will receive no recovery (unless and until all superior classes of claims are satisfied), is impaired; however, each holder of Equity Interests is deemed to have voted to accept this Plan.

6.2     <u>Cramdown</u>.  If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8), the Debtor shall request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, so long as at least one impaired Class of Claims has accepted this Plan, on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting impaired Class.

## ARTICLE VII
## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND DISPUTED CLAIMS UNDER THIS PLAN

7.1     Responsibility for Objecting to Claims.  Only the Debtor may file objections to Claims after the Effective Date of this Plan.  No other party may file objections to Claims after the Effective Date of this Plan.  The failure of the Debtor prior to Confirmation to object to a Claim for purposes of voting on this Plan shall in no way be deemed to be a waiver of the right of the Debtor to object to such Claim in whole or in part.  The Debtor reserves the right to contest and object to any Claim asserted against the Debtor, including any Claim not listed in the Schedules, listed therein as disputed, contingent and/or unliquidated in amount or listed therein at a lesser amount than asserted in a Proof of Claim.

7.2     Objections to Claims.  The Debtor may reserve (in lieu of payment) for any Claim that the Debtor may, in good faith, dispute and with respect to which they have a right to object pursuant to Section 7.1.  A Claimant who's Claim is the subject of the objection must file with the Bankruptcy Court, and serve upon the Debtor, a response to the objection.  All objections to any Claims shall be filed within ninety (90) days of the Effective Date.  Failure to file and serve a response within the applicable period required by the Bankruptcy Code, Bankruptcy Rules or any order of the Bankruptcy Court shall allow the Bankruptcy Court to enter a default judgment against the non-responding Claimant and thereby grant the relief requested in the objection.  After the Effective Date, the Debtor shall be required to obtain an Order from the Bankruptcy Court to settle and compromise any and all Disputed Claims.

7.3     Filing and Assertion of Claims.  All proofs of claim, and the assertion of any Claim, must be either listed in the Debtor's Schedules or filed by the Bar Date or such Claim shall otherwise be forever barred.  Moreover, any proofs of claim filed after the Bar Date shall be deemed disallowed in full and expunged without any action by the Debtor, unless the Claimant obtains an order of the Bankruptcy Court authorizing a late filing.  Nothing herein shall affect, amend or modify any Bar Date in this Bankruptcy Case.

7.4     No Distributions Until Claim is an Allowed Claim.  Notwithstanding any other provision of this Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim; and no payment or distribution shall be made with respect to a Claim other than an Allowed Claim.  If a Claim that remains a Disputed Claim as of the Effective Date is thereafter Allowed in whole or in part, the Debtor shall make the distributions required by the provisions of this Plan to be made in respect of the Allowed portion of such Claim as and when, and in the installments, if any, required by such provisions; provided that, if and to the extent that such provisions would have required an earlier distribution or distributions had such Claim been Allowed as of the Effective Date, each distribution that would have been made earlier shall be made on the date that such Claim becomes an Allowed Claim, or as soon thereafter as reasonably practicable.

7.5     Voting.  Holders of Disputed Claims shall not be entitled to vote with respect to this Plan unless such Claims are estimated, for voting purposes, by order of the Bankruptcy Court entered on or prior to the deadline for voting on this Plan.

7.6     Prohibition on Distributions Attributable to Claims While Any Avoidance Litigation is Pending.  The Debtor shall make no distributions upon a Claim held by a Claimant against whom the Debtor asserts any Avoidance Action until resolution of the Avoidance Action by settlement or judgment or as otherwise provided by Bankruptcy Court order.  Avoidance Actions are retained as property of the Debtor under this Plan and such actions may be pursued solely by the Debtor.

7.7     Absolute Priority Rule: The Bankruptcy Code requires that if the shareholders of the Debtor are to retain their stock, then all classes of impaired claims must either accept the treatment provided for in the proposed plan, or be paid the full amount of their Allowed Claims as of the Effective Date. The First Amended Plan provides that the equity holders shall retain their stock in the Debtor and continue to operate their business under the present management. Therefore, since unsecured creditors holding Allowed Claims may not receive one hundred percent (100%) payment of their claims on the Effective Date, all classes must vote to accept the proposed First Amended Plan.

## ARTICLE VIII
## IMPLEMENTATION AND MEANS FOR EXECUTION OF PLAN

8.1     Assignment of Working Interest from Aurora Energy. On the Petition Date, Aurora Energy, Inc., the majority working interest owner of the Swenson No. 1 Well, was delinquent in paying the Debtor its portion of joint interest billings ("JIBS") that had been incurred by the Debtor. The total amount of delinquent JIBS owed by Aurora Energy was approximately 2.3 Million Dollars; attributable to Aurora Energy's seventy percent (70%) working interest. The balance of the working interest is vested in Metano Energy III, LP. The production from the Swenson No. 1 Well maintains the underlying oil and leases for the entire Swenson Ranch Field which comprises approximately 13,219.89 acres.

8.1.1   In satisfaction of the payment of the outstanding JIBS owed to the Debtor, Aurora Energy has agreed to assign and convey its working interest in the drill site acreage attributable to the Swenson No. 1 Well to the Plan Trustee. The Debtor has determined that the value of the Aurora Energy working interest is at least equal to the total amount of all Allowed Claims against the estate. The Net Production Revenue attributable to the Aurora Energy working interest in the Swenson No. 1 Well, will in turn fund the plan pursuant to the provisions of Article IX herein.  *Aurora Energy shall retain its working interest in the remaining acreage of the Swenson Ranch Field.*

8.1.2   The Debtor will continue to serve as the Operator of the Swenson No. 1 Well pursuant to the terms of the pre-petition joint operating agreement and develop additional potential drill sites on the Swenson Ranch Field. After confirmation, the Debtor will enter into new oil and gas purchase agreements to ensure the revenue is delivered directly to the Plan Trustee for disbursements.

8.1.3   When all classes of claims are paid in full, the Debtor and/or Plan Trustee may re-assign or convey the working interest of Aurora Energy.

8.1.4   The Debtor and the working interest owners may continue to develop additional oil and gas prospects on the acreage comprising the Swenson Ranch Field. On the Effective Date, any liens of any Class 2 Allowed Claims will be released from the remaining acreage of the Swenson Field to allow the Debtor to fully develop the additional acreage for the working interest owners.

8.2   Sale of Excess Equipment. In addition to the assignment of the working interest of Aurora Energy as described in Paragraph 8.1 above, Aurora Energy has agreed to sell and transfer certain excess pumping equipment and materials that are on the drill site location for the Swenson No. 1 Well. Prior to the Confirmation Date, the Debtor and Aurora Energy will provide a detailed description of such excess equipment and the estimated value or price offered. Any funds attributable to the sale of such equipment shall be used by the Debtor to fund the Plan.

8.3   Vesting of Property of the Estate in the Debtor.   On the Effective Date, all remaining property of the Debtor and of the Estate, including all rights to object to Claims, all avoidance actions, causes of action, alter-ego rights, derivative claims, breach of fiduciary duty claims, veil piercing rights, the right to pursue such claims and all other remaining property of the estate as defined in § 541 of the Bankruptcy Code, shall vest in the Debtor, free and clear of liens, claims and encumbrances, except as otherwise provided in the Plan and on the condition that the Reorganized Debtor complies with the terms of the First Amended Plan, including making all payments to creditors holding Allowed Claims provided for in such Amended Plan. In the event the Reorganized Debtor defaults in performing under the provisions of this First Amended Plan, and this case is converted to a case under Chapter 7 of the Bankruptcy Code all property vested in the Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

## ARTICLE IX
## MANNER OF DISTRIBUTION AND PROVISION
## FOR TREATMENT OF CLAIMS AND SETOFFS

9.1   Distribution Procedures.   Any payments or distributions to be made by the Debtor, or the Plan Trustee, to Claimants as required by this Plan shall be made only to the holders of Allowed Claims.  Any payment, delivery or distribution by the Debtor pursuant to this Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Debtor into the United States mail.  Distributions or deliveries required to be made by this Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.  No payments or other distributions of property shall be made on account of any Claim or portion.

9.2   Disputed Payments or Distributions.   In the event of any dispute between or among Claimants as to the right of any Person to receive or retain any distribution to be made to such Person under this Plan, the Debtor may make it instead into a reserve for payment or distribution as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves.  Any Claimant which fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed

distribution by the Debtor shall be deemed to have forever waived any right to dispute such distribution or to restrict the use of such distribution.

9.3   Minimum Distribution.  Notwithstanding anything to the contrary in this Plan, the Debtor shall not be required to make aggregate distributions of less than Twenty-Five Dollars ($25.00) to any holder of an Allowed Unsecured Claim, unless the Debtor elects to do so.

9.4   Setoff.   The Debtor may set off any claims of any nature whatsoever that the Debtor, or The Plan Trustee, may have against a Claimant, such Claimant's Claim or the payment or distribution to be made pursuant to this Plan with respect to such Claimant's Claim. Notwithstanding the foregoing, the failure to affect such a setoff will not constitute a waiver or release by the Estate or the Debtor of any such claim against such holder.

9.5   Interest on Claims.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Unsecured Claim.

9.6   Further Authorizations.  The Debtor, if and to the extent necessary, may seek such orders, judgments, injunctions and rulings that any of them deems necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, this Plan.

9.7   Termination of the Estate.  After all Allowed Claims (i) in Class 8 are satisfied, and (ii) the cash portion of the Class 9 claims are satisfied (iii) the preparation and filing of any tax returns required of the Estate, the Debtor, in accordance with this Plan, shall be discharged and have no further responsibilities or duties.  The Debtor shall file a final report with the Court and request that the Case be closed.

9.8   Directors and Officers.  The existing officers and the board of directors of the Debtor (or their duly elected or appointed replacements) shall continue to serve in their current capacities after the Effective Date.  The Officers shall be compensated at the same salary as their pre-petition salary and benefits. The following shall be deemed to be all of the officers and directors of the Debtor:

9.9   Creation of Plan Trust for Purpose of Distribution and Litigation   On the Effective Date, a trust (the "Plan Trust") is hereby created for the purpose of funding the Class 2 and 3 Creditors and satisfying Allowed Claims.  The Plan Trust will not engage in the conduct of a trade or business.  This Plan shall serve as the trust instrument and no other trust instrument shall be prepared or entered into.  The Debtor's, are and shall be treated as, the Grantors of the Plan Trust and the Debtors are owners of the res being transferred to the Plan Trust.  The Trust assets shall consist of (i) the funds attributable to the Net Production Revenue necessary to satisfy the Class 2 Allowed Claims (ii) the Allowed Unsecured Class 3 and 4 Claims.

9.10   Plan is Trust Instrument.  This Plan shall serve as the trust instrument and no other trust instrument shall be prepared or entered into.

9.11   Beneficiaries of Plan Trust.  Holders of Allowed Claims in Class 2 and 3 shall be the beneficiaries of the Plan Trust.  The Plan Trustee, if required by applicable law, shall file

10

federal income tax returns for the Plan Trust pursuant to the applicable provisions of the Internal Revenue Code.

9.12    <u>Distribution of Net Production Revenue Attributable to the Swenson No. 1 Well.</u>  The Plan Trustee shall make the payments required under this Plan to the holders of Allowed Claims who have not already been paid. Any Net Production Revenue attributable to the Swenson No. 1 Well will only be distributed after all professional fees and expenses have been paid in full pursuant to an Order from the Bankruptcy Court.

9.13    <u>Appointment of the Plan Trustee.</u>   The Debtor shall continue to operate its business after the Effective Date. However, pursuant to this Plan, the Plan Trustee shall be appointed to collect, administer and distribute revenue in accordance with the terms of this Plan. Whenever this Plan or Plan Documents require or permit notice to the Debtors after the Effective Date, such notice shall be effective only when given to the Plan Trustee.  After the Effective Date, the Plan Trustee shall have the right to take all actions that the Debtors would have had the right to take under or with respect to this Plan or otherwise, whether in any specific instance this Plan so provides or not.

9.14    <u>Identity and Employment of the Plan Trustee</u>. Mr. Andrey Platanuv, President of the Debtors, shall be the proposed Plan Trustee. The Plan Trustee will initially be appointed by the Bankruptcy Court in the Confirmation Order. The Plan Trustee will act as the Estates' representative for all purposes, and will be responsible for, among other things,  (i) administering the Trust Assets; (ii) filing, prosecuting and settling Claim objections; (iii) prosecuting and settling the Estates' causes of action; (iv) making distributions and creating reserves in accordance with the terms of this Plan; (v) winding-up and closing the Estates; (vi) abandoning any of the assets of the Debtors if the Plan Trustee concludes that such assets are of no benefit to the Creditors; (vii) enforcing the payment of notes or other obligations of any Person; (viii) opening and maintaining bank accounts on behalf of or in the name of the Debtors; (ix) paying all lawful expenses, debts, charges and liabilities of the Debtors; (x) appointing, engaging, employing, supervising, and compensating officers, employees, and other Persons as may be necessary or desirable, including managers, consultants, accountants, technical, financial, real estate, or investment advisors or managers, attorneys, agents or brokers, corporate fiduciaries, or depositories; (xi) executing, delivering, and performing such other agreements and documents and to take or cause to be taken any and all such other actions as may be necessary or desirable to effectuate and carry out the purposes of the Plan; (xii) undertaking any action necessary to maintain the corporate existence and/or dissolve, the Debtors; (xiii) undertaking any action necessary to ensure that the Debtors are and remain in good standing and compliance with applicable federal, state, and local laws; (xiv) filing any federal, state, or local tax returns and provide for the payment of any related taxes; and (xv) undertaking any action or perform any obligation provided for or required under the Plan.

9.15    <u>Compensation of Plan Trustee.</u> It will not be required for the Plan Trustee's compensation to be approved by the Bankruptcy Court.  The Plan Trustee will be authorized to employ legal and accounting professionals employed by the Debtors pre-confirmation, as well as such other professionals as the Plan Trustee may deem necessary and appropriate, including without limitation employment of professionals on a contingent fee basis.  In case of the

resignation or inability to serve of a Plan Trustee, a successor Plan Trustee shall be appointed by the Bankruptcy Court.

9.16   <u>Records</u>.  The Plan Trustee, on behalf of the Debtors, shall maintain records and account books relating to the Estates' property, the management of the Estates' property, and all transactions undertaken by the Plan Trustee.  The Plan Trustee shall also maintain, on behalf of the Debtors, records and account books relating to all Distributions contemplated and made under the Plan.

9.17   <u>Further Authorizations</u>.  The Debtors and the Plan Trustee, if and to the extent necessary, may seek such orders, judgments, injunctions and rulings that any of them deems necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, this Plan.

9.18   <u>Termination of the Estates</u>.  After the Final Class 4 Distribution Date, and the preparation and filing of any tax returns required of the Estates, the Plan Trustee shall be discharged and have no further responsibilities or duties. After the final Class 4 distribution, the Plan Trustee shall file a final report with the Court and request that the Case be closed.

9.19   <u>Tax Treatment.</u>  Consistent with Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Sections 671-677 of the Internal Revenue Code. The holders of Beneficial Interests shall be treated for tax purposes as the grantors and deemed owners of the Trust.  Any items of income, deduction, credit or loss of the Trust shall be allocated, for federal income tax purposes, to the holders of Beneficial Interests on a Pro Rata basis.

## ARTICLE X
## EXECUTORY CONTRACTS AND LEASES

10.1   <u>Assumption of Contracts and Leases</u>.  Pursuant to 11 USC §365, all commercial leases shall be deemed assumed as of the Effective Date, unless the applicable Executory Contracts and Leases have previously been assumed and assigned or rejected by order of the Bankruptcy Court.  Rejection of any Executory Contract or Lease shall be pursuant to the terms of the Confirmation Order unless the applicable Executory Contracts and Leases have previously been assumed and assigned or rejected by order of the Bankruptcy Court or as a matter of law.

## ARTICLE XI
## CONDITIONS PRECEDENT

11.1   <u>Conditions Precedent to Effectiveness</u>.  This Plan shall not become effective unless and until the following conditions have occurred or been waived in writing by the Debtor:

11.1.1   The Bankruptcy Court shall have entered the Confirmation Order in a form and substance satisfactory to the Debtor; and

11.1.2    The Confirmation Order shall have become a Final Order entered on the Court's docket and shall be not be subject to a stay by any Court of competent jurisdiction.

## ARTICLE XII
## EFFECTS OF PLAN CONFIRMATION

12.1    <u>Satisfaction, Release and Discharge of Claims</u>.  The Confirmation of this Plan shall discharge the Debtor and its property or assets from all Claims that existed or arose before the Confirmation Date and extinguish completely all liabilities in respect of any Claim or other obligation or Equity Interest, whether reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that existed or arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise existed or arose prior to the Confirmation Date, including, without limitation, all interest, if any, on any such Claims, Equity Interests or obligations, whether such interest accrued before or after the Petition Date, and including, without limitation, any liability of the kind specified in Sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not a Proof of Claim is filed or deemed filed under Section 501 of the Bankruptcy Code, such Claim is allowed under Section 502 of the Bankruptcy Code, or the holder of such Claim accepted this Plan.  The treatment of and consideration to be received by holders of Allowed Claims or Equity Interests pursuant to this Plan are in full satisfaction, settlement, discharge, and release of and in exchange for such holders' respective Claims against or Equity Interests in the Debtor and the Estate.

12.2    <u>Injunction</u>.  Except as otherwise specifically provided in this Plan or in the Confirmation Order, if the Effective Date occurs, the Confirmation Order shall be deemed to permanently enjoin all Persons that have held, currently hold or may hold a Claim against, or be owed obligations by, the Debtor or the Estate or any Representative of the Debtor or the Estate, or who have held, currently hold or may hold an Equity Interest in the Debtor, from taking any of the following actions on account of such Claim or Equity Interest: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, the Estate, the Trust Assets, or any respective Affiliates or Representatives; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, the Trust Assets, or any respective Affiliates or Representatives; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any lien, charge, encumbrance or other Lien of any kind against the Debtor, the Estate, the Trust Assets, or any respective Affiliates or Representatives; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor, the Estate, the Trust Assets, or any respective Affiliates or Representatives; and (v) proceeding in any manner, directly or indirectly, in any place whatsoever against the Debtor, the Estate, the Trust Assets, or any respective Affiliates or Representatives.

12.3    <u>No Liability for Solicitation or Participation</u>.  Pursuant to Section 1125 of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan and/or that

participate in the offer, issuance, sale, or purchase of securities offered or sold under or in connection with this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

12.4    <u>Releases and Limitation of Liability of Exculpated Persons</u>.   The Exculpated Persons shall not have or incur any liability to any Person for any act taken or omission made in good faith in connection with or in any way related to negotiating, formulating, implementing, confirming, or consummating this Plan, the Disclosure Statement or any contract, instrument, filing with governmental agencies, release, or other agreement or document created in connection with or related to this Plan, any prior plan or disclosure statement of the Debtor, or the administration of the Bankruptcy Case, nor with respect to any liability, claim or cause of action, whether known or unknown, asserted or unasserted, belonging to or assertable by the Debtor or the Estate against the Exculpated Persons, from the beginning of time until the Effective Date.  The Exculpated Persons shall have no liability to any Person for actions taken in good faith under or relating to this Plan or in connection with the administration of the Bankruptcy Case including, without limitation, failure to obtain confirmation of this Plan or to satisfy any condition or conditions precedent, or waiver of or refusal to waive any condition or conditions precedent to Confirmation or to the occurrence of the Effective Date.  Further, the Exculpated Persons shall not have or incur any liability to any Person for any act or omission in connection with or arising out of their administration of this Plan, except for gross negligence or willful misconduct as determined by the Bankruptcy Court.

12.5    <u>Term of Injunctions and Stays</u>.   Unless otherwise specifically provided in this Plan or the Confirmation Order, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105, 362 or 524 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

12.6    <u>No Liability for Tax Claims</u>.   Unless a taxing authority has asserted a Claim against the Debtor before the Bar Date established therefor, no Claim of such authority shall be Allowed against the Debtor or the Estate for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other Entity to have paid taxes or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

## ARTICLE XIII
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

13.1    <u>Modification of this Plan</u>.   The Debtor may alter, amend or modify this Plan under Section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.   After the Confirmation Date and prior to the substantial consummation of this Plan, any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims or Equity Interests under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order,

14

and any other matters as may be necessary to carry out the purposes and effects of this Plan; provided, however, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

13.2    <u>Revocation or Withdrawal of this Plan</u>.  The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Debtor revoke or withdraw this Plan prior to the Confirmation Date, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**ARTICLE XIV**
**RETENTION OF JURISDICTION**

14.1    <u>Jurisdiction of Bankruptcy Court</u>. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case and all matters arising under, arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction allowing it:

14.1.1    To hear and determine motions, applications, adversary proceedings, avoidance actions and contested matters pending on or commenced after the Effective Date;

14.1.2    To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim or Equity Interest, and to enter any order requiring the filing of proof of any Claim or Equity Interest before a particular date;

14.1.3    To ensure that distributions to holders of Allowed Claims are accomplished as provided in this Plan;

14.1.4    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

14.1.5    To construe and to take any action to enforce this Plan and the Confirmation Order;

14.1.6    To issue such orders as may be necessary for the implementation, execution and consummation of this Plan and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order, and the transactions contemplated hereby;

14.1.7    To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

14.1.8    To hear and determine all applications for Professional Fees;

14.1.9    To hear and determine other issues presented or arising under this Plan;

14.1.10   To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

14.1.11   To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and

14.1.12   To enter the Final Decree.

14.2    <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Section 14.1, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XV
## DEFINITIONS

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.  Unless otherwise provided in this Plan, the following terms (which appear in this Plan as capitalized terms) have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

15.1    "<u>Administrative Expense Claim</u>" means a Claim for costs and expenses of administration of the Bankruptcy Case allowed under Sections 503, 507(a)(2) or 507(b) of the Bankruptcy Code, including Claims for taxes entitled to treatment under Section 507, and approved by Final Order of the Bankruptcy Court, and all fees and costs assessed against the Estate pursuant to 28 U.S.C. § 1930.

15.2    "<u>Administrative Expense Claims Bar Date</u>" means thirty (30) days after the Effective Date.

15.3    "<u>Affiliate</u>" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code and, in addition, shall mean, with respect to any Person, any other Person directly or indirectly controlling (including all directors, officers, managers and general partners of such person, and Persons performing similar functions), directly or indirectly controlled by or under direct or indirect common control with such Person.  For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative of the foregoing.

15.4    "<u>Allowed</u>" means, as it relates to any type of Claim provided for under this Plan (other than a Disputed, Contingent or Unliquidated Claim), a Claim (i) which has been scheduled

as undisputed, noncontingent, and liquidated in the Schedules and as to which (a) no proof of Claim has been Timely Filed, and (b) no objection thereto has been Timely Filed; (ii) as to which a proof of Claim has been Timely Filed and either (a) no objection thereto has been Timely Filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been expressly allowed (but only to the extent expressly allowed) under the provisions of this Plan or by other order of the Bankruptcy Court; or (iv) which is an Administrative Expense Claim approved by Final Order of the Bankruptcy Court.  Disputed, Contingent, or Unliquidated Claims shall become Allowed Claims only when Allowed pursuant to a Final Order of the Bankruptcy Court.

15.5    "Assets" means all property of the Estate as defined in the Bankruptcy Code.

15.6    "Avoidance Actions" means any and all actions which a trustee, Debtor-in-possession or other appropriate party in interest may assert on behalf of the Estate under applicable state statute or Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553.

15.7    "Bankruptcy Case" means the bankruptcy case initiated by the Debtor when it filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on January 11, 2016 enumerated as Case No. 16-30218.

15.8    "Bankruptcy Code" means Title 11 of the United States Code, Section 101, et seq., as now in effect or as hereafter amended.

15.9    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over this Bankruptcy Case.

15.10   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075 of Title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be modified or amended.

15.11   "Bar Date" means May 11th, 2016, the last date set by the Bankruptcy Court for filing claims in this Bankruptcy Case.

15.12   "Business Day" means any day which is not a Saturday, a Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

15.13   "Cash" means lawful currency of the United States of America.

15.14   "Claim" means a claim against the Debtor, or its property, as such term is defined in Section 101(5) of the Bankruptcy Code.

15.15   "Claimant" means the holder of any Claim against the Debtor, or its property, or of any Equity Interest.

17

15.16   "Class" means a category of Claims or Equity Interests, as classified in Article III of this Plan.

15.17   "Collateral" means any property or interest in property of the Estate subject to a Lien, not otherwise subject to avoidance under the Bankruptcy Code, to secure the payment or performance of a Claim.

15.18   "Confirmation" or "Confirmation of this Plan" means the approval of this Plan pursuant to Section 1129 of the Bankruptcy Code by the Bankruptcy Court.

15.19   "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

15.20   "Confirmation Hearing" means the hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider Confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

15.21   "Confirmation Order" means the final order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

15.22   "Contingent Claim" means any Claim that has not matured and is dependent upon an event that has not occurred or may never occur.

15.23   "Debtor" means Aurora Operating Co. .

15.24   "Disclosure Statement" means the Disclosure Statement in support of this Plan dated May 1st, 2016, including all exhibits, appendices, schedules, and annexes attached thereto, as submitted by the Debtor pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be amended, supplemented, or modified from time to time.

15.25   "Disputed Claim" means any Claim or any portion thereof which has not become Allowed.  For purposes of this Plan, a Claim that has not been Allowed by a Final Order shall be considered a Disputed Claim, whether or not an objection has been or may be Timely Filed, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules; (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules; (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated; (iv) no corresponding Claim has been scheduled in the Schedules; (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof or; (vi) the amount, validity, priority or other rights of the Claim are otherwise being contested.

15.26   "Effective Date" means, and shall occur ten (10) days after the Confirmation Order becomes a Final Order.  Notice of the Effective Date shall be filed with the Bankruptcy Court.

15.27 "Entity" means any corporation, general or limited partnership, limited liability company or partnership, joint venture, association, trust, government agency, body or political subdivision thereof, or unincorporated association, group or body, or other entity.

15.28 "Equity Interest" means any equity interest in the Debtor within the meaning of Section 101(16) of the Bankruptcy Code, and shall include any common stock, preferred stock or other equity or ownership interest in the Debtor, any security or note convertible into or exchangeable for such stock or interest, and any option, warrant or other right to subscribe for or acquire any such stock or interest, each as existing immediately prior to the Effective Date.

15.29 "Estate" mean the Estate created for the Debtor in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

15.30 "Exculpated Person" means the Debtor, on and after the Petition Date, and each of its Representatives.

15.31 "Executory Contracts" means all "executory contacts," as such term is used in Section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

15.32 "Final Decree" means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

15.33 "Final Order" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

15.34 "Leases" means all "unexpired leases," as such term is used within Section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

15.35 "Lien" means valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind, which is not subject to avoidance or subordination under the Bankruptcy Code or other applicable law.

15.36 "Net Production Revenues" means any funds received by the Debtor or the Plan Trust attributable to the sale of oil, gas and other hydrocarbons attributable to the Swenson No. 1 Well after payment of all royalty interests, and all fees and expenses of professionals engaged by the Debtor or Plan Trustee.

15.37 "Ordinary Course Administrative Claim" means any Administrative Claim incurred in the ordinary course of the Debtor's business on and after the Petition Date but shall not include: (i) any Claim for Professional Fees and any expenses, compensation, or reimbursement requested pursuant to subsections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code, which shall be subject to Bankruptcy Court approval; (ii) any taxes (including income,

sales, use, property or other taxes incurred subsequent to the Petition Date); (iii) any Claims for breach of contract, tort, or other actionable conduct; and (iv) any post-petition obligations incurred under Executory Contracts or Leases which are rejected pursuant to this Plan or prior to the Effective Date of this Plan.

15.38   "Person" means any person, individual, Entity, or other entity or being of whatever kind, whether or not operating or existing for profit, including, but not limited to, any "person" as such term is defined in section 101(41) of the Bankruptcy Code.

15.39   "Petition Date" means January 11, 2016.

15.40   "Plan" means this Plan of Reorganization of the Debtor, and any amendments, supplements or modifications thereto.

15.41   "Trust Assets"  or "Plan Assets" means all property of the Estate, including but not limited to the funds necessary to satisfy the Allowed Unsecured Claims in Class 2, 3 and 4 and all other property acquired by or transferred to the Estate after the Effective Date.

15.42   "Plan Documents" means such other documents required to be filed pursuant to this Plan or filed as a Plan Document by the Debtor, which shall be filed on or before ten (10) days before the date of the Confirmation Hearing.

15.43   "Priority Claim" means a Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Expense Claim or a Priority Tax Claim.

15.44   "Professional" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

15.45   "Professional Fees" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

15.46   "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor, pursuant to Bankruptcy Rules 3001 or 3002.

15.47   "Representative" means, with respect to any specified Entity, the officers, directors (or the functional equivalent, if any), employees, agents, attorneys, accountants, financial advisors, other representatives, subsidiaries, affiliates or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended.

15.48   "Schedules" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

15.49   "Secured Claim" means a Claim that is (i) secured as provided by Section 506(a) of the Bankruptcy Code, in whole or in part, by a Lien on any assets of the Debtor that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Collateral securing such Claim; or (ii) subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the amount subject to such setoff.

15.50   "Timely Filed" means, with respect to a Claim, Equity Interest or Administrative Expense, that a proof of such Claim or Equity Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court within such applicable period of time fixed by this Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

15.51   "Unliquidated Claim" means any Claim that is undetermined as to amount.

15.52   "Unsecured Claim" means any Claim that is not an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, a Subordinated Claim, an Equity Interest, or an Assumed Liability.

### ARTICLE XVI
### MISCELLANEOUS PROVISIONS

16.1   Payment of Statutory Fees.   All fees payable by the Debtor pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid as follows: any outstanding pre-confirmation fees due as of the Effective Date shall be paid on the Effective Date; post-confirmation fees shall be paid as they accrue until this case is converted or closed by the Bankruptcy Court, whichever occurs first.  The Debtor shall submit an affidavit of quarterly disbursements to the United States Trustee until the Debtor's case is converted or closed by the Bankruptcy Court.

16.2   Retention of Actions and Defenses.   All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of Section 541 of the Bankruptcy Code, as well as all claims, rights, defenses, offsets, recoupments, and causes of action arising under Chapter 5 of the Bankruptcy Code (including without limitation the Avoidance Actions) with respect to the Debtor, shall be and hereby are preserved for the benefit of the Debtor and shall be and hereby are deemed to be part of the assets of the Debtor.  The foregoing includes, but is not limited to, all claims and causes of action referenced in the Debtor's bankruptcy schedules, statement of financial affairs, and disclosure statement as amended.

16.3   No Admissions.   Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor or be used as the basis of a waiver or estoppel against the Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim or Equity Interest or the propriety of any classification of any Claim or Equity Interest.

16.4    Plan Controls.  To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and this Plan, the terms and provisions of this Plan shall control.

16.5    Substantial Consummation of Plan.  This Plan shall be deemed to be substantially consummated on the Effective Date.

16.6    Successors and Assigns.  The rights, benefits, and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of, such Person.

16.7    Severability.  Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable or illegal or unenforceable as applied to any Claim or Equity Interest, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect.

16.8    Notices and Distributions.  All notices, requests and distributions to a holder of a Claim or Equity Interest shall be sent (i) to the last known address of the holder or its attorney of record as reflected in the holder's Proof of Claim or Administrative Expense Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtor.  Any holder of a Claim or Equity Interest may designate another address for the purposes of this Section by providing the Debtor written notice of such address which notice will be effective upon receipt by the Debtor.  All notices, requests, elections and other communications to the Debtor will be deemed given when actually received by the Debtor and must be given by certified mail, postage prepaid, return receipt requested, to: James B. Jameson, James B. Jameson & Associates, P.C., 400 Louisiana, Ste. 4545, Houston, Texas 77002.

16.9    Filing of Documents in Public Records.  Pursuant to §1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security or the making of an instrument of transfer under this Plan (including without limitation the filing of any mortgage, deed of trust, security agreement, uniform commercial code financing statement or other similar document) shall not be taxed under any law imposing a stamp tax or similar tax.

16.10    Withdrawal of Plan. The Debtor reserves the right to withdraw this Plan at any time prior to the Confirmation Date.  If the Debtor withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date (or the Effective Date) does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtor, the Estate or any other person, or to prejudice in any manner the rights of the Debtor, the Estate or any person in any further proceedings involving the Debtor.

16.11    Due Authorization by Creditors.  Each and every Creditor who elects to participate in the Distributions provided for herein (i) warrants that it is authorized to accept, in

consideration of its Claim against the Debtor, the Distributions provided for in this Plan; (ii) states that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by him under this Plan; and (iii) indemnifies and holds harmless the Liquidating Debtor, the Plan Agent and their professionals and representatives with respect to such Distributions.

16.12    Filing of Additional Documentation.    On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

16.13    Implementation.    The Debtor shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

16.14    Pre-petition Lawsuits.    On the Effective Date, all lawsuits, litigation, administrative actions or other proceedings, judicial or administrative, relating to pre-petition events or conduct of the Debtor, in connection with the assertion of a Claim, shall be dismissed as to the Debtor.  Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by this Plan.  Confirmation of this Plan and entry of the Confirmation Order shall have no effect on insurance policies of the Debtor.

16.15    Governing Law.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or by the general corporation law, limited partnership law or limited liability company law or the law of the jurisdiction of organization of any entity governing the internal affairs of such entity, the internal laws of the State of Texas shall govern the construction and implementation of this Plan and any agreements, documents and instruments executed in connection with this Plan or the Bankruptcy case, including the Plan Documents, except as may otherwise be provided in such agreements, documents, instruments and this Plan.

16.16    Defaults.    Any act or omission by a party in interest in contravention of a provision within this Plan shall be deemed an event of default under this Plan.  Upon an event of default, the Debtor may seek to hold the defaulting party in contempt of the Confirmation Order. If such party in interest is found to be in default under this Plan, such party shall pay the reasonable attorneys' fees and costs of the Debtor in pursuing such matter.  Furthermore, upon the finding of such a default by a party in interest, the Bankruptcy Court may (i) designate a party to appear, sign and/or accept the documents required under this Plan on behalf of the defaulting party, in accordance with Federal Rules of Civil Procedure, Rule 70; or (ii) make such other order as may be equitable which does not materially alter the terms of this Plan as it is Confirmed.

16.16.1 A failure by the Reorganized Debtor to make a payment to a creditor pursuant to the terms of the First Amended Plan, shall be an event of default to that creditor under the First Amended Plan. In the event of such default, the creditor shall send written notice of such default to the Reorganized Debtor and the Plan Trustee. If the default is not cured within ten (10) days after notice of default is received, the creditor

may exercise any and all such rights and remedies under applicable non-bankruptcy law to collect such claim or seek relief as may be appropriate in the Bankruptcy Court..

16.17   <u>Binding Effect</u>.  This Plan shall be binding on and inure to the benefit of the Debtor, any Purchaser, the holders of Claims or Equity Interests (whether or not they have accepted this Plan) and their respective heirs, executors, administrators, Representatives, successors and assigns.

16.18   <u>Other Documents and Actions</u>.  The Debtor may execute such documents and take such other action as is reasonable, necessary, or appropriate to effectuate the transactions provided for in this Plan.

## CONFIRMATION REQUEST

The Debtor hereby requests confirmation of this Plan pursuant to Section 1129 of the Bankruptcy Code.

Dated:   May 1st, 2016

**AURORA OPERATING LLC**

By:        /s/___Andrey Platunov
            President and Managing Director

By:        /s/ Craig H. Cavalier
            _____

**CRAIG H. CAVALIER**
State Bar No. 04022075
5555 West Loop South, Suite 600
Bellaire, Texas 77401
(713) 621-4720 –Telephone
(713) 621-4779 – Fax
ccavalier@cavalierlaw.net
**COUNSEL FOR THE DEBTOR-IN-POSSESSION**

**APPENDIX 1**

**LIQUIDATION ANALYSIS**

**APPENDIX 2**

**FINANCIAL PRO FORMAS AND BALANCE SHEET**